990 F.2d 1261
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ernest CARAVALHO, Defendant-Appellant.
 No. 91-10557.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 1993.
Decided April 16, 1993.
 
 Before GOODWIN, NOONAN and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Ernest Caravalho (Caravalho) appeals his jury conviction for cultivating in excess of 1,000 marijuana plants. He raises numerous arguments on appeal. The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 and affirm.
 
 I. SUFFICIENCY OF INDICTMENT
 
 3
 We review de novo the sufficiency of an indictment. United States v. Dischner, 960 F.2d 870, 886 (9th Cir.), amended on other grounds, 974 F.2d 1502 (1992).
 
 
 4
 In United States v. James, 980 F.2d 1314 (9th Cir.1992), this court recently held that where an indictment does not contain all elements of the crime and is challenged post-trial, reference to a statute is sufficient to overcome the defect as long as the defendant receives adequate notice of the missing elements in order to satisfy due process. Id. at 1318.
 
 
 5
 Because Caravalho's objection was post-trial, reference to the statute was sufficient to cure the defect in the indictment. The statute contained the requisite elements of the crime, and thus due process was satisfied because the indictment adequately apprised Caravalho of the elements of the crimes charged. Caravalho could have resolved any ambiguity in the indictment prior to trial by filing the appropriate motion. United States v. Coleman, 656 F.2d 509, 510 (9th Cir.1981). His delay in objecting to the indictment negates any prejudice in preparing a defense. United States v. Pheaster, 544 F.2d 353, 361 (9th Cir.1976), cert. denied, 429 U.S. 1099 (1977).
 
 
 6
 Moreover, any error in the indictment is rendered harmless beyond a reasonable doubt because the error could have had no effect upon the outcome of the case. See James, 980 F.2d at 1318-19. The judge properly instructed the jury as to all elements of the crimes charged and the jury found Caravalho guilty based upon those instructions. See Pheaster, 544 F.2d at 363 (although jury instructions cannot save a fatally defective indictment, they alleviate prejudice).
 
 
 7
 Finally, we reject Caravalho's argument that his Fifth Amendment right to be charged by a grand jury was violated. We conclude that even if error occurred during the grand jury proceeding as a result of the indictment, it is harmless beyond a reasonable doubt because the jury convicted him.
 
 II. SEARCH AND SEIZURE
 
 8
 The lawfulness of a search and seizure is a mixed question of law and fact which we review de novo. United States v. Linn, 880 F.2d 209, 214 (9th Cir.1989).
 
 
 9
 Caravalho argues that the district court should have suppressed physical evidence seized from the Hawaiian Acres property even though it was seized pursuant to a warrant because it was the fruit of an initial illegal warrantless search. We disagree.
 
 
 10
 We conclude that because Officer Weber's initial observations did not constitute an illegal search, the subsequent seizure of evidence pursuant to a warrant was not tainted. United States v. Hersh, 464 F.2d 228, 229-30 (9th Cir.) (per curiam), cert. denied, 409 U.S. 1008 (1972). Weber was legitimately on the premises in the course of an unrelated burglary investigation. He was not searching for evidence of Caravalho's marijuana growing operation. Because Weber's observations did not constitute an illegal search, they properly formed the basis for probable cause and issuance of the search warrant. United States v. Roberts, 747 F.2d 537, 543 (9th Cir.1984). Therefore, the district court correctly denied Caravalho's motion to suppress.
 
 III. SUFFICIENCY OF EVIDENCE
 
 11
 Sufficiency of evidence claims are reviewed to "determine whether any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. The test is whether the evidence and all reasonable inferences which may be drawn from it, when viewed in the light most favorable to the government, sustain the verdict." United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990) (internal quotation omitted).[1]
 
 
 12
 We conclude that the district court properly denied Caravalho's motion for acquittal because the record reflects sufficient evidence to convict him for using a weapon during a drug trafficking crime and for possessing an unregistered firearm. Caravalho had control over the Hawaiian Acres property. Although there was evidence that he did not have "exclusive control" of the property because it was rented to a third party, at the very least he shared control of the premises and had unlimited access to it. Both of these factors were evidenced by the fact that he possessed keys to the residence, greenhouse and gate. Because Caravalho had dominion and control over both the premises and the marijuana growing operation, the Government established a nexus between Caravalho and the gun which was sufficient to support the inference that he had constructive possession of the gun. See Terry, 911 F.2d at 278.
 
 
 13
 Furthermore, Lieutenant Fergerstrom's expert testimony regarding the practice of drug traffickers to utilize loaded weapons to protect their crops helped establish the requisite connection. United States v. Torres-Rodriguez, 930 F.2d 1375, 1385 (9th Cir.1991); see also United States v. Guy, 903 F.2d 1240, 1243 (9th Cir.1990) (expert witness testimony as to role sawed-off shotgun plays in protecting cocaine distribution operations helps establish sufficient evidence for conviction under § 924(c)). He testified that in this particular instance the sawed-off shotgun was strategically located to serve that purpose because it provided quick access to ward off uninvited intruders.
 
 
 14
 In addition, there was damaging testimony from Caravalho's friend, Krause, who had observed him watering the marijuana plants and planting seeds. Also, when he had first arrived, he changed in the bathroom on the second floor into clothes which were already at the residence. Finally, there was testimony of Caravalho's admission that the marijuana plants were his.
 
 
 15
 Therefore, viewing the above evidence in the light most favorable to the Government, a rational jury could find Caravalho guilty of counts two and three.
 
 IV. JURY INSTRUCTION
 
 16
 Because Caravalho failed to object to the jury instructions prior to jury deliberations, we review for plain error. See United States v. Bordallo, 857 F.2d 519, 527 (9th Cir.1988) ("Rarely will an improper jury instruction justify a finding of plain error."), amended on other grounds, 872 F.2d 334 (9th Cir.), cert. denied, 493 U.S. 818 (1989); see also United States v. Kessi, 868 F.2d 1097, 1102 (9th Cir.1989).
 
 
 17
 We reject Caravalho's contention that the jury instructions were misleading because Instruction No. 13 requires the jury to find a violation of § 924(c)(1) regardless of whether he knew of the gun's presence. Instruction No. 13 instructs the jury as to what constitutes "use" pursuant to § 924(c)(1). The language of the instruction was derived from this court's decision in Torres-Rodriguez and tracks the language found in that case regarding what constitutes "use." 930 F.2d at 1385. Instruction Nos. 12 and 14 specifically instructed the jury that it was required to find Caravalho had "knowingly" used the gun and that he had knowledge of its presence.
 
 
 18
 Furthermore, Instruction No. 14 is derived from the Ninth Circuit Manual of Model Jury Instructions § 3.16 (1989 ed.), and a similar possession instruction was upheld in United States v. Chambers, 918 F.2d 1455, 1459 (9th Cir.1990). Therefore, when Instruction No. 12 is read in conjunction with Nos. 13 and 14, the district court's charge to the jurors sufficiently instructed them as to what they were required to find in order to convict Caravalho of the § 924(c)(1) crime.
 
 V. JUROR NON-DISCLOSURE DURING VOIR DIRE
 
 19
 We review for abuse of discretion the denial of a motion for a new trial based upon an allegation of lack of jury impartiality. United States v. Aguon, 851 F.2d 1158, 1170 (9th Cir.1988) (en banc). In addition, "[a]n evidentiary hearing must be granted unless the alleged misconduct could not have affected the verdict or the district court can determine from the record before it that the allegations are without credibility." United States v. Navarro-Garcia, 926 F.2d 818, 822 (9th Cir.1991) (emphasis added).
 
 
 20
 In order to obtain a new trial as a result of the jurors' non-disclosure during voir dire, Caravalho must demonstrate first that the jurors failed to answer honestly a material question during voir dire, and second that a correct response would have been a valid basis for a challenge for cause. McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984); United States v. Nickell, 883 F.2d 824, 827 (9th Cir.1989).
 
 
 21
 We conclude that the Caravalho has satisfied neither part of the McDonough test. First, he has not demonstrated that any juror failed to answer a question honestly during voir dire. Nickell, 883 F.2d at 827. There is no evidence that any of the jurors deliberately concealed information. We agree with the district court that the affidavit of Caravalho's attorney's law clerk lacks credibility and is an insufficient ground to support either an evidentiary hearing or a new trial. The affidavit states that "all" of the jurors had been personally and adversely affected by friends or relatives who had used drugs, including marijuana. Caravalho is hard-pressed to demonstrate that each and every juror had such an experience. We do know that at least two of the jurors had such an experience because they answered truthfully during voir dire, and that they remained on the panel after the parties and the court questioned them further and were satisfied that the jurors could be fair and impartial. Furthermore, the affidavit does not indicate which, if any, of the jurors were dishonest. It does not state that Anthony Beebe himself had such a personal experience or even that he was dishonest during voir dire. We find the affidavit's blanket conclusory statement that the jurors were predisposed to convict a party who grew large amounts of marijuana insufficient to support a finding that the jurors answered dishonestly during voir dire.
 
 
 22
 Similarly, Caravalho has failed to establish the second part of the McDonough test. He has not shown that even if the jurors had answered truthfully about their personal experiences with drugs, it would have been a valid basis to justify a challenge for cause. Nickell, 883 F.2d at 827. Seven potential jurors answered affirmatively in response to the voir dire question regarding their personal experiences with marijuana or other controlled substances. Of those seven, only two were dismissed for cause, while two remained on the jury panel, and three were struck with peremptory challenges. Thus, Caravalho has not demonstrated that a truthful answer would have resulted in a challenge for cause. In addition, all the jurors had stated that they could be fair and impartial.
 
 
 23
 Therefore, we conclude that the district court did not abuse its discretion in denying Caravalho's motion for a new trial.
 
 VI. ACCEPTANCE OF RESPONSIBILITY
 
 24
 We review the district court's determination as to whether the defendant has accepted responsibility for clear error. United States v. Fine, 946 F.2d 650, 652 (9th Cir.1991), rev'd on other grounds, 975 F.2d 596, 598 n. 1 (9th Cir.1992) (en banc). "The district court's determination will not be disturbed unless it is without foundation." Id. (citations omitted) (emphasis in original).
 
 
 25
 We reject Caravalho's argument that the district court erred in refusing to reduce his offense level by two for acceptance of responsibility. A defendant is only entitled to a two-point reduction if he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a) (Nov. 1990). The application notes contain various factors the court may consider, including "voluntary and truthful admission to authorities of involvement in the offense and related conduct ... [and] the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." Id. comment. (n. 1(c) & (g)). Moreover, the "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." Id. comment. (n. 2).
 
 
 26
 In refusing to grant Caravalho the two-point reduction, the district court concluded that he was not entitled to the reduction because he had made conflicting statements as to his conduct and responsibility. At the time of his arrest, he admitted the marijuana was his; but, subsequently at the suppression hearing, he denied responsibility and attempted to place the blame on someone named "Jocko." He put the Government to its proof at trial because he denied guilt and his attorney argued that he wasn't responsible for the crime.[2] In addition, there is no evidence that Caravalho expressed remorse or contrition. See United States v. Daly, 974 F.2d 1215, 1218 (9th Cir.1992). Therefore, because there is sufficient foundation for the district court's determination, we uphold its decision to deny the two-point reduction.
 
 VII. DUE PROCESS
 
 27
 Finally, Caravalho contends that the district court's application of U.S.S.G. § 2D1.1 denied him due process because the district court failed to take into account the actual amount of marijuana his plants would have produced. This contention is foreclosed based upon our recent decision in United States v. Belden, 957 F.2d 671 (9th Cir.), cert. denied, 113 S.Ct. 234 (1992). The defendant in Belden had argued that application of U.S.S.G. § 2D1.1 violated due process because there was no evidence that one plant could possibly produce that much marijuana. Id. at 675. The defendant had produced evidence that mature plants would produce about fifty-six grams of marijuana. Id. We rejected his argument and upheld the sentence, adopting the Seventh Circuit's analysis in United States v. Webb, 945 F.2d 967 (7th Cir.1991), cert. denied, 112 S.Ct. 1228 (1992). Belden, 957 F.2d at 675-76. Belden held that equating one marijuana plant with one kilogram withstands a due process challenge because it has a rational basis. Id. at 676. Section 2D1.1's "rationality lies in its recognition of a higher level of culpability for marijuana growers compared to those who merely possess the harvested product. Marijuana growers operate at the top of the distribution chain, and are thought an important target for purposes of deterrence." Id.
 
 
 28
 In accordance with Belden, it is irrelevant that Caravalho's plants may have produced less than the 1 KG per plant. The district court properly calculated Carvalho's base offense level at thirty-two because the number of plants seized from the Hawaiian Acres property exceeded 1,000. U.S.S.G. § 2D1.1(c)(6).
 
 
 29
 In addition, Caravalho's sentence does not violate the cruel and unusual punishment clause of the Eighth Amendment because it is not disproportionate to the crime committed. Although Belden did not address an Eighth Amendment challenge, its reasoning nonetheless applies. Belden reasoned that the Guidelines reflect a higher level of culpability for marijuana growers for purposes of deterrence. Id. at 676. Caravalho's sentence proportionately reflects the magnitude of his crime in light of the deterrence goal. Therefore, Caravalho's sentence violates neither due process nor the Eighth Amendment.
 
 
 30
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Even though Caravalho technically waived his right to challenge sufficiency because he made his motion for acquittal at the close of the Government's case, he rested his own case without presenting any evidence in his defense. Thus, because he effectively made the motion at the close of all evidence presented, we review under the usual sufficiency standard and not under the plain error standard
 
 
 [2]
 Although Caravalho did not testify at trial, his position at trial was to deny responsibility